UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

ESTATE OF ESSIE MAE KEYS, DEBRAH
KEYS, individually and as legal representative of
the estate

                        Plaintiff,

-against-                                      07 Civ. 6561 (RJH)

**MEMORANDUM OPINION
AND ORDER**

UNION PLANTERS BANK, N.A., et al.,

                        Defendants.

Plaintiff Debrah Keys, on behalf of herself and as executrix of the Estate of Essie May Keys, brings this action for a variety of claims arising out of the foreclosure and sale of a property in the Bronx originally owned by her deceased mother. Before this Court now are plaintiff's motion for summary judgment and defendants' cross-motions for summary judgment. For the reasons stated below, plaintiff's motion for summary judgment is denied and defendants' cross-motions for summary judgment are granted.

## BACKGROUND

On May 2, 2000, defendant Union Planters Bank, N.A. ("Union Planters") commenced a foreclosure action in the Supreme Court of New York, Bronx County, against plaintiffs Debrah Keys and Estate of Essie Mae Keys ("Estate") on their property located at 4164 Wickham Avenue, Bronx, New York City (the "Property") due to missed mortgage payments. (Rosen Decl. Ex. A.) Defendant Country Home Loans, Inc. ("CHL") was subsequently substituted as the plaintiff in the foreclosure action due to an assignment of the mortgage from Union Planters

to CHL. (Rosen Decl. ¶ 2.) Union Planters served Keys with a Summons and Notice of the foreclosure complaint on May 27, 2000. (Fidelity 12 (b) (6) Memo. Ex. A.) Union planters also served the estate through publication pursuant to an order from the foreclosure court. (Rosen Decl. Ex. C.)

Keys moved by order to show cause on July 3, 2001 to dismiss the foreclosure action, (Fidelity 12(b)(6) Memo. Ex. C), alleging that she had not been properly served and that, in any event, she owed nothing to Union Planters, (Rosen Decl. Ex. D). Justice Alan J. Saks denied the motion with leave to renew. (*Id.*) Keys moved again by order to show cause to dismiss the foreclosure action on August 29, 2001, but ultimately withdrew the motion by leave of the court on September 21, 2001. (*Id.* at Ex. F, G.) Keys made another motion on November 16, 2001, for which the court directed additional information to be submitted. (Fidelity 12(b)(6) Memo. Ex. E.) Keys made a final motion to dismiss on January 25, 2002, (*Id.* at Ex. F). The court consolidated the November 16 motion with the January 25 motion and denied them both on June 4, 2002, (Rosen Decl. Ex. H). The court found that Keys had been properly served and that she had presented no evidence supporting her defense that no monies were due because of a life insurance policy.

On October 2, 2002, Keys filed a notice of appeal from Justice Sak's dismissal with the Appellate Division of the Supreme Court of New York, First Judicial department, (Fidelity 12 (b) (6) Memo. Ex. F,) and retained counsel, (*Id.* at Ex. I). The Appellate division subsequently declined to stay Justice Sak's order and dismissed the appeal on December 24, 2002, (Rosen Decl. Ex. K). On August 1, 2003, Justice Saks issued a judgment of foreclosure and sale on the Property. (*Id.* at Ex. L.)

Keys moved by order to show cause on September 30, 2003 to stay the foreclosure sale. (*Id.* at Ex. M.) After having been advised that Keys had filed a complaint against him with the New York State Commission on Judicial Conduct, Justice Saks recused himself from the case. (*Id.*) Justice Betty Owen Stinson, to whom the case was referred, denied the order to show cause both on procedural grounds and on the merits, finding the application to be untimely and, in any event, no more than an attempt to improperly appeal a decision already dismissed by the Appellate Division. (Fidelity 12(b)(6) Memo. Ex. L.) Keys appealed Justice Owen's decision to the Appellate Division of the Supreme Court of New York First Department, and that court denied her application for an injunction. (Rosen Decl. Ex. P, Q.) The Court of Appeals of New York also denied an appeal by plaintiff on June 8, 2006. (Fidelity 12(b)(6) Memo. Ex. R.) A court-appointed referee, defendant David Lesch, Esq., subsequently filed a Referee's Report of Sale and Referee's Deed confirming that the Property had been sold at a public foreclosure sale. (Rosen Decl. Ex. V.)

**PROCEDURAL HISTORY**

On July 20, 2007, plaintiff filed a complaint with this Court asserting a number of claims against defendants. Plaintiff moved for an order to show cause, which this Court denied. Plaintiff then filed an amended complaint on November 13, 2007. Defendants Churchill Homes, LLC, Better Homes Depot, Inc., New York Community Bank, New York Community Bankcorp C&G Land Abstract, LLC, Fidelity National Title Group, Fidelity National Title Insurance Co., and Fidelity National Financial, Inc. (collectively, the "Fidelity Defendants") motioned to dismiss the complaint with prejudice for failing to comply with this Court's scheduling order of October 29, 2007. Defendants Countrywide Home Loans, Inc. d/b/a America's Wholesale

3

Lender and Countrywide Financial Corporation (collectively, "Countrywide") filed an answer to the amended complaint and a cross-claim against the other defendants on December 7, 2007. Plaintiff then submitted a reply to Countrywide's answer and cross-claim on December 7, 2007; she also submitted opposition papers opposing the motion to dismiss on January 7, 2008. The Fidelity Defendants filed reply papers to plaintiff's opposition on January 18, 2008. On February 20, 2008, plaintiff moved for judgment on the pleadings. In a letter to the Court, Thomas P. Malone – attorney for the Fidelity Defendants – requested that the Court consider his motion to dismiss and plaintiff's hybrid motions as summary judgment motions. The Court granted the application and gave Countrywide leave to file a cross-motion for summary judgment. The Fidelity Defendants filed opposition papers to plaintiff's motion for summary judgment, as well as a cross-motion for summary judgment. Countrywide also filed a cross-motion for summary judgment. Further opposition papers were filed by parties on both sides.

**DISCUSSION**

*Constitutional Claims*

While it is difficult to decipher, the complaint appears to allege numerous constitutional violations. In paragraphs 2-10, and 18, plaintiff alleges Equal Protection, Due Process, and Thirteenth Amendment violations but does not make clear against whom she makes her charges. A claim is meritless if it "fails to state, with any degree of particularity, the purpose of or any overt acts perpetrated by defendants that reasonably relate to the claimed conspiracies." *Zemsky v. City of New York*, 821 F.2d 148, 151 (2d Cir. 1987). This is equally true of a *pro se* complaint, despite the requirement that *pro se* complaints be liberally construed by the Court. *See, e.g., Sommer v. Dixon*, 709 F.2d 173, 175 (2d Cir. 1983) (per curiam) (stating that a *pro se* complaint

4

"containing only conclusory, vague, or general allegations of conspiracy to deprive a person of constitutional rights cannot withstand a motion to dismiss"). In her complaint, not only does plaintiff fail to allege facts with specificity that might apprise the Court of what constitutional harms she suffered, she also does not make clear which of the defendants against whom she directs her charges. The complaint therefore does not meet the liberal pleading standards of Rule 8 of the Federal Rules of Civil Procedure, even under a generous reading of her complaint. Fed. R. Civ. P. 8. In any event, it is well-established that "the United States Constitution regulates only the Government, not private parties." *United States v. Int'l Bhd. of Teamsters*, 941 F.2d 1292, 1295 (2d Cir. 1991) (citing *Blum v. Yaretsky*, 457 U.S. 991, 1002 (1982)). Thus insofar as the named defendants are private parties, such claims are without foundation or support in law.

Plaintiff also seems to claim in paragraph 5 that the New York State courts unconstitutionally discriminated against her on the basis of race. "[A] general principle of the highest importance to the proper administration of justice [is] that a judicial officer, in exercising the authority vested in him, should be free to act upon his own convictions, without apprehension of personal consequences to himself." *Stump v. Sparkman*, 435 U.S. 349, 355 (1978) (citations and brackets omitted). Accordingly, "judges of courts of superior or general jurisdiction are not liable to civil actions for their judicial acts, even when such acts are in excess of their jurisdiction, and are alleged to have been done maliciously or corruptly." *Bradley v. Fisher*, 80 U.S. (13 Wall.) 335, 351 (1871). A judge "will be subject to liability only when he has acted in the 'clear absence of *all* jurisdiction.'" *Id.* (emphasis added). In the foreclosure proceedings, there is no doubt that the courts acted squarely within the scope of their authority. The Supreme Court of New York is a court of general jurisdiction and thus has power over foreclosures actions that come before it. *See* N.Y. Judiciary Law § 140-b (2005). Because the foreclosure

5

proceedings operated under proper subject matter jurisdiction, the New York courts are absolutely immune from liability, and plaintiff's claim fails.

*Precluded Issues*

Plaintiff complains in paragraph 11 of a "collusion to steal Plaintiffs' homestead property." Reading the complaint liberally, plaintiff presumably seeks to challenge the propriety of the original foreclosure. "The fundamental notion of the doctrine of collateral estoppel, or issue preclusion, is that an *issue of law or fact* actually litigated and decided by a court of competent jurisdiction in a prior action may not be relitigated in a subsequent suit between the same parties or their privies." *Ali v. Mukasey*, 529 F.3d 478, 489 (2d Cir. 2008) (quoting *United States v. Alcan Aluminum Corp.*, 990 F.2d 711, 718-19 (2d Cir. 1993)) (quotation marks omitted). "Accordingly, collateral estoppel applies when: (1) the issues in both proceedings are identical, (2) the issue in the prior proceeding was actually litigated and actually decided, (3) there was a full and fair opportunity for litigation in the prior proceeding, and (4) the issues previously litigated were necessary to support a valid and final judgment on the merits." *Ali*, 529 F.3d at 489 (quoting *Gelb v. Royal Globe Ins. Co.*, 798 F2d 38, 44 (2d Cir. 1986). Plaintiff is precluded from claiming that the foreclosure was improper, because that issue was actually litigated and actually decided by the New York State courts several times. There is no evidence that the state court proceedings failed to provide a full and fair opportunity for litigation, and the record is replete with several valid and final judgments on the issue. Consequently, the Court cannot revisit the question of whether or not the foreclosure was legitimate.

Furthermore, even if the Court were to read Paragraph 11 as stating an additional claim of fraud not presented to and decided by the state courts, the doctrine of *res judicata* bars

6

consideration of such a claim because it could have been raised in the state action but was not. Under *res judicata*, "a final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action." *Burgos v. Hopkins*, 14 F.3d 787, 789 (2d Cir. 1994) (quoting *Allen v. McCurry*, 449 U.S. 90, 94 (1980)). Because "[a] federal court must give the same preclusive effect to a state court decision as a state court would give it," *Cowan v. Ernest Codelia, P.C.*, 149 F. Supp. 2d 67, 73 (S.D.N.Y. 2001), this Court accordingly follows New York's *res judicata* doctrine. New York takes a "transactional approach to res judicata, barring a later claim arising out of the same factual grouping as an earlier litigated claim even if the later claim is based on different legal theories or seeks dissimilar or additional relief." 28 U.S.C. § 1738; *id.*; *Smith v. Russell Sage College*, 54 N.Y.2d 185 (1981). Using such an analysis, the Second Circuit has held that with regard to suits relating to foreclosure proceedings, "fraudulent seizure claim[s] . . . arise from the same factual grouping that form[] the basis of . . . [a] state court action." *Weston v. First Union Nat'l Bank*, 201 F.3d 434, 434 (2d Cir. 1999). In *Weston v. First Union Nat'l Bank*, the court refused to entertain a *pro se* appellant's allegation that a bank "fraudulently seized appellant's home" and "barred [him] from asserting his fraud claims under the doctrine of *res judicata*" because the issue could have been raised earlier in state court. Because the appellant failed to do so during the foreclosure, he was later prevented from asserting that claim since it arose from the same factual grouping surrounding the state case. Likewise, the plaintiff here failed to allege in state court that the defendants fraudulently seized and foreclosed on her home, and so to the extent that she makes that claim now, it is barred by *res judicata*.

Plaintiff's claim in Paragraphs 10, 18, 41, 42, and 43 that the foreclosure did not adhere to Due Process requirements is similarly precluded. Paragraphs 44–57 of the complaint broadly

7

allege that the loan related to the mortgage was procured by fraud. These are also claims "arising out of the same factual grouping as an earlier litigated claim even [though] . . . based on different legal theories or seeks dissimilar or additional relief," *Cowan*, 149 F. Supp. 2d at 73, and involve "issues that were or could have been raised in that action." *Burgos v. Hopkins*, 14 F.3d 787, 789. Thus plaintiff is also barred from raising those claims in this Court under *res judicata*.

*Enslavement*

Plaintiff claim in Paragraph 12 of her complaint that "[t]here is a conspiracy amongst banks, to enslave the people, specifically blacks" is wholly without merit, fails to state a claim with sufficient particularity, and is unsupported by evidence. Plaintiff's claims in Paragraphs 71 and 72 that defendant is in violation of "the usury laws" and did not have the authority to issue loans are similarly without merit, fail to state a claim with sufficient particularity, and are unsupported by evidence. Consequently, they cannot be sustained as a matter of law.

*Rooker-Feldman*

Plaintiff next argues in paragraphs 13, 14, 15, and 16 of her complaint that the state Supreme Court "proceeded, in clear absence of jurisdiction," to defraud and unlawfully deprive her of the Property because "all persons concerned in executing such [void] judgments or sentences, are considered, in law, as trespassers." She reasons, "[s]ince a void order/judgment is a nullity, it can be challenged and expunged in any State or Federal Court in the U.S.," (Compl. ¶ 10), and indeed, that is what she asks this Court to do in Paragraph 2 of her "Prayer for Relief." She further asks for declaratory judgment and an injunction in her favor. (Compl. ¶ 74–82,

8

Prayer for Relief 1–3, 5, 6.) Plaintiff is unable to seek such remedies from this Court, however, because under the *Rooker-Feldman* doctrine, United States district courts lack subject-matter jurisdiction over "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 283-84 (2005). In applying *Rooker-Feldman*, the Second Circuit articulated four requirements: "First, the federal-court plaintiff must have lost in state court. Second, the plaintiff must complain of injuries caused by a state-court judgment. Third, the plaintiff must invite district court review and rejection of that judgment. Fourth, the state-court judgment must have been rendered before the district court proceedings commenced–i.e., *Rooker-Feldman* has no application to federal-court suits proceeding in parallel with ongoing state-court litigation." *Hoblock v. Albany County Bd. of Elections*, 422 F.3d 77, 85 (2005) (quoting *Exxon Mobil*, 544 U.S. at 85) (quotation marks and alterations omitted). "[A] federal suit complains of injury from a state-court judgment, even if it appears to complain only of a third party's actions, when the third party's actions are produced by a state-court judgment and not simply ratified, acquiesced in, or left unpunished by it." *Id.* at 88. Whether this Court has subject-matter jurisdiction under *Rooker-Feldman* "turns not on the *similarity* between a party's state-court and federal-court claims (which is, generally speaking, the focus of ordinary preclusion law), but rather on the *causal relationship* between the state-court judgment and the injury of which the party complains in federal court." *McKithen v. Brown*, 481 F.3d 89, 97-98 (2d Cir. 2007). That is to say, this Court may exercise subject-matter jurisdiction if the plaintiff is able to present some independent claim based on an injury not "caused by" the state-court judgment, even if the claim denies a legal conclusion of the state court. *Id.*

9

The claims made in paragraphs 13, 14, 15, and 16 of the complaint meet the four-part test of *Rooker-Feldman*, and are therefore beyond the subject-matter jurisdiction of this Court. Plaintiff lost in state court, complains now of the foreclosure caused by the state courts' judgments, and invites this Court in Paragraph 2 of his "Prayer for Relief and elsewhere to "set aside and nullify the title transfer". She further asks us to enjoin the defendants against the orders of the state courts and commenced this action almost four years after the judgment of foreclosure by Justice Saks. Although defendants foreclosed on her home, there was a "causal relationship" as defined in *McKithen* since the foreclosure would not have occurred but-for the judgment of Justice Saks. Thus the foreclosure may fairly be said to have been "produced by [the] state-court judgment." *Hoblock*, 422 F.3d at 88. Plaintiff's demand that this Court voids the state courts' actions is thus one for which we can provide no relief.

Plaintiff further claims in Paragraphs 63 and 64 that defendants David Lesch and Fidelity unlawfully and fraudulently transferred the foreclosed Property to defendant Churchill. Because granting plaintiff relief for these claims is "essentially challenging the result of the New York Supreme Court proceedings" and "would effectively require the District Court to vacate the foreclosure order issued by the state court," this Court is without jurisdiction to take such action under *Rooker-Feldman* for the reasons stated above. *Grumbkow v. Greenpoint Bank*, 132 Fed. App. 913, 914 (2d Cir. 2005). Similarly, even if plaintiff provided sufficient evidence for the Court to find that the foreclosure proceedings were wrongly decided—thereby potentially stating a claim for conversion—such a finding would be beyond the scope of this Court's authority because it would require negating the state court's determinations. *Exxon Mobil Corp.*, 544 U.S. at 283-84. Accordingly, plaintiff has failed to offer facts sufficient to sustain a cause of action under summary judgment.

*Claims Without Standing*

In paragraph 62 of the complaint, plaintiff alleges fraud with regard to an appraisal performed on the Property after the foreclosure. Plaintiff also requests that the Court order various defendants to pay taxes on and restore the Property. Plaintiff, however, has no standing to make such a demand. Under Article III of the United States Constitution, federal courts cannot entertain claims for which the plaintiff does not have standing to assert. *Bennet v. Spear*, 520 U.S. 154, 162 (1997). To have standing to assert a claim, a plaintiff must "demonstrate that [s]he has suffered 'injury in fact,' that the injury is 'fairly traceable' to the actions of the defendant, and that the injury will likely be redressed by a favorable decision." *Id*. Because plaintiff did not have title or any other economic interest in the Property when it was appraised, plaintiff did not suffer an injury in fact. Accordingly, the claims in paragraph 62 must be dismissed.

*Abuse of Process*

Paragraphs 58 and 59 of plaintiff's complaint accuse Churchill Homes, LLC and Better Homes Depot, Inc. and its counsel of abuse of process. Abuse of process is a tort based on state law. *E. Equip. and Servs. Corp. v. Factory Point Nat'l Bank, et al.*, 236 F.3d 117, 119 (2001) (listing abuse of process as a claim based on state tort law). Under 28 U.S.C. § 1367, federal courts may exercise supplemental jurisdiction "over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. § 1367 (2006). If a court dismisses all claims over which it has original federal jurisdiction, however, it may also decline

11

to exercise supplemental jurisdiction over the remaining claims based solely on state law. 28 U.S.C. § 1367 (c)(3); *see also Rweyemamu v. Cote*, 520 F.3d 198, 210 (2d Cir. 2008) (affirming district court's refusal to exercise supplemental jurisdiction over state-law claims after district court had properly dismissed federal claim).

While the Court clearly has jurisdiction over plaintiff's constitutional claims, for the reasons stated above, those claims must be dismissed. Given that plaintiff's only remaining claim is abuse of process, a state law claim, the Court declines to exercise supplemental jurisdiction and dismisses this claim as well.

*Rule 11 Sanctions*

Plaintiff requests that the Court sanction counsel for Fidelity, Thomas P. Malone, for allegedly deceiving the Court. Rule 11(c)(1)(A) of the Federal Rules of Civil Procedure requires that "[a] motion for sanctions under this rule shall be made separately from other motions . . . ." Fed. R. Civ. P. 11(c)(1)(A). Because the request for sanctions was improperly included in plaintiff's cross-motion for summary judgment, this Court cannot entertain it.

## CONCLUSION

For the reasons stated above, defendants' motions for summary judgment are granted and plaintiff's cross-motion for summary judgment is denied. The Clerk of the Court is directed to close this case.

SO ORDERED.

Dated: New York, New York
September 29, 2008

Richard J. Holwell
United States District Judge